H. B. DEAL & COMPANY, INC., a Corporation, Appellant, v. HAMILTON-BROWN SHOE COMPANY, a Corporation, and WILLIAM H. KILLOREN, Trustee in Bankruptcy of HAMILTON-BROWN SHOE COMPANY, a Corporation, Bankrupt.—160 S. W. (2d) 719.

Division One, February 26, 1942.

Rehearing Denied, April 16, 1942.

*Julius H. Drucker, Philip C. Wise, David H. McGhee* and *E. H. Wayman* for appellant.

*Jones, Hocker, Gladney & Grand* and *Harry S. Gleick* for respondents.

 CLARK, J.—Plaintiff sued in the circuit court of the City of St. Louis to recover a judgment for a balance alleged to be due on a contract to alter, repair, remodel and renovate a certain building and to have such judgment declared and adjudged to be a mechanic's lien upon the buildings, improvements and real estate described in the petition. The court, sitting without a jury, rendered judgment for defendants and plaintiff has appealed.

There is little, if any, dispute as to the facts. The defendant corporation, being the owner of two buildings and the real estate upon which same were situate, made a contract with plaintiff corporation to alter and remodel the buildings. These buildings were located on two separate lots with a nineteen foot alley between the buildings. The contract provided for the alteration and improvement of both buildings and for connecting them with enclosed bridges or passageways at two floor levels above the alley. From time to time new improvements and changes were orally agreed to. The petition states that defendant corporation agreed to pay plaintiff "the actual cost or reasonable value" of all materials and labor furnished by plaintiff, all amounts paid by plaintiff to subcontractors, all incidental expense, and a commission or profit of ten per cent of such costs. Some of the labor was furnished by plaintiff's own employees, other labor and materials were furnished by subcontractors employed by plaintiff, either on lump sum contracts or on a time and material basis. The president of defendant corporation approved all sub-contracts and changes in plans and was kept informed as to all labor and materials used in the work. There is no serious dispute as to the reasonableness of the charges for labor or materials nor any claim that the work was not completed in a satisfactory manner. The work was begun on September 23, 1938, and completed on March 1, 1939. Plaintiff filed its lien paper in the office of the circuit clerk on April 15, 1939, and brought this suit two days later. Later the defendant corporation, on its voluntary petition, was adjudged a bankrupt by the federal district court in St. Louis and defendant Killoren was appointed trustee of the assets of said bankrupt. On May 8, 1939, plaintiff filed its petition in the federal district court and obtained an order permitting it to prosecute the present suit in the state circuit court in St. Louis. Defendant Killoren, as trustee, has entered his appearance and has filed answer.

 Legal questions confronting us on this appeal are: (1) Is the plaintiff entitled to a lien under our Mechanic's Lien Law? [R. S. Mo. 1939, secs. 3546-3579, inclusive; Mo. Stat. Ann., pp. 4972-5016.]

(2) If plaintiff is not entitled to a lien, is it entitled to a general judgment?

Respondents contend that plaintiff is not entitled to a lien because the lien paper is not a "just and true account" as required by the statutes, in that it does not show the materials furnished, the work done and the prices charged in such manner as to apprise the owner and the public of the nature and amount of the demand; that lienable and non-lienable items are intermingled in a way that they cannot be separated by an examination of the lien paper; that the two lots, separated by an alley, are not "contiguous" as required by Section 3579, supra.

Appellant concedes that the portions of the lien account referring to labor and materials furnished by appellant's own employees and that furnished by subcontractors who did work on a time and material basis are not sufficiently itemized. But appellant says that payments made by defendant corporation are more than sufficient to discharge such incorrectly stated items; that appellant is entitled to have the payments applied to such items and is entitled to a lien for the balance consisting of work and materials furnished by subcontractors on a lump sum basis.

On this point appellant cites: McMillan & Parker v. Milling Co., 275 Mo. 1, 204 S. W. 257; Lumber Co. v. Kinder, 206 Mo. App. 287, 225 S. W. 1024; Planing Mill Co. v. Allison, 138 Mo. 50, 40 S. W. 118; Grace v. Nesbit, 109 Mo. 9, 18 S. W. 1118; Hilliker v. Francisco, 65 Mo. 598, and Kern v. Pfaff, 44 Mo. App. 29. Lump sum charges in lien accounts were approved in those cases. The rule is that, if the contract is to furnish the labor and materials, or either, for a certain price, it is sufficient to recite in the lien claim the articles furnished and then state the one price, without stating the charge for each item. However, appellant's lien statement does not comply with the rule. It nowhere states that any labor or materials were to be furnished for a certain price, either by appellant or by a subcontractor, but does show that all the work and labor were to be furnished upon an actual cost plus ten per cent basis. It merely states names of persons or firms, followed by itemized charges without stating what the charges are for and without even stating whether they are for labor or materials.

Appellant says that where there are no interests involved except those of the lienor and owner a most liberal construction of the statute should be given. Also, as the proof shows that the defendant corporation's president was constantly informed as to prices of the work and materials which went into the job, as well as to sums paid to subcontractors, the lien account should be approved, citing Lumber Co. v. Robson, 182 Mo. App. 611, 168 S. W. 244; certiorari quashed in State ex rel. v. Reynolds, 266 Mo. 595, 182 S. W. 743. In that case the St. Louis Court of Appeals approved the lien statement and

this court, en banc, refused to quash the opinion as being in conflict with our previous decisions; but a casual reading of the lien statement there considered will show that it was itemized with much more certainty and particularity than the lien statement in the instant case. Also, in that case, both the court of appeals and this court placed some importance on the fact that the only persons interested were the owner and the lienor. That is not true in the instant case, for here the fact that the owner is a bankrupt and represented by a trustee shows that other creditors are interested in whether appellant's claim shall be established as a lien in preference to their claims.

We hold that the lien statement is not a substantial compliance with our statutes and that the trial court did not err in so holding. [See Schroeter Bros. Hdw. Co. v. Gymnastic Assn., 332 Mo. 440, 58 S. W. (2d) 995; Martin-Welch Hdw., etc., Co. v. Spencer (Mo. App.), 214 S. W. 417; Baker v. Smallwood, 161 Mo. App. 257, 143 S. W. 518; Planing Mill, etc., Co. v. Krebs, 196 Mo. App. 432, 193 S. W. 621.] So holding, it is unnecessary to pass upon other objections to the lien statement, such as whether the separation of the lots by an alley prevents them from being "contiguous."

Did the trial court err in refusing to render a general judgment for plaintiff?

At the request of plaintiff and on its own motion the court made many findings of fact and conclusions of law. In one of them, [listed as a conclusion of law, but which seems to be a finding of fact] the court found that the Estate of Hamilton-Brown Shoe Company, in Bankruptcy, was at the date of filing suit, April 15, 1939, indebted to plaintiff in the principal sum of $12,155.59, with interest in the sum of $1,592.36, making a total indebtedness on that date of $13,-747.80. Also the court concluded as a matter of law that it had "no jurisdiction to enter a general judgment against either the estate of said Hamilton-Brown Shoe Company or William H. Killoren, trustee of said estate, for the said indebtedness or any part thereof." Then the court rendered judgment "that the plaintiff take nothing by reason of his cause of action and that defendants be discharged and go hence without day as to said cause of action," adjudging the cost against the plaintiff and its surety on the cost bond.

To sustain its claim for a general judgment, appellant cites a number of Missouri decisions which announce the general rule that, in mechanic's lien suits where the indebtedness is proved, plaintiff may have a general judgment although a lien is denied him. That rule is not disputed by respondents, but they contend: that exclusive jurisdiction of bankruptcy is vested in the federal courts; that while the federal court permitted plaintiff to proceed in the state court, it could do so only for the purpose of establishing a lien and was without power to grant permission to the state court to determine the amount of indebtedness. We are not impressed with this argu-

ment. While the order for permission to prosecute the suit in the state court was not offered in evidence, it is admitted in defendants' answer and found by the court that the order granted permission "to proceed with *this* litigation." *This* litigation is a suit to determine indebtedness and enforce a lien. Before the state court could enforce a lien, it must of necessity determine the fact and amount of indebtedness. A less surrender of jurisdiction by the bankruptcy court is involved in permitting the state court to determine the amount of indebtedness than to permit it to both determine the indebtedness and enforce the same as a lien.

Respondents cite the following decisions by federal courts: U. S. F. & G. Co. v. Bray, 225 U. S. 205, 56 L. Ed. 1055, 32 Sup. Ct. 620; Robertson v. Howard, 229 U. S. 254, 57 L. Ed. 1174, 33 Sup. Ct. 854; In re Kelley, 297 Fed. 676; Investment Registry v. C. & M. Electric Co., 251 Fed. 510.; In re Diamond's Est., 259 Fed. 70; Thompson v. Magnolia Petroleum Co., 309 U. S. 478, 84 L. Ed. 876, 60 Sup. Ct. 628; In re Schulte-United, Inc., 50 Fed. (2d) 243; Natl. Automatic Tool Co. v. Goldie, 27 Fed. Supp. 399. These cases decide that the exclusive jurisdiction of bankruptcy matters is vested in the Federal courts, and they are not at liberty to surrender control over matters of administration. Isolated passages may be gleaned from them giving a semblance of support to respondents' argument, but such support is not found in the questions actually decided. Some of these cases recognize that it is legal and proper for federal courts, having jurisdiction of bankruptcy, to consent to submission of some controversies for trial in state courts. Why should they be so submitted if the state court is powerless to decide the issues necessarily involved? In this case, why should the plaintiff, after proving his indebtedness in the state court under permission of the federal court, be compelled to introduce the same evidence in the federal court, and why should it be necessary for the federal court to hear such evidence?

We quote from respondents' brief as follows:

"The court below made a finding of the amount of indebtedness due by the Hamilton-Brown Shoe Company to appellant. We have no doubt that such finding constitutes an adjudication of the amount of the indebtedness, that respondent William H. Killoren as Trustee of the Hamilton-Brown Shoe Company will recognize the validity of that finding, and that it will be accepted as a matter of comity if not as a matter of compulsion, by the Bankruptcy Court. We can assure appellant that its fears that it may be required to litigate all over again in the Bankruptcy Court the amount of the indebtedness, are groundless."

If the argument quoted is sound, that recognition by the federal court of the state court's finding on one issue [indebtedness] rests only upon comity, why should not the other issue [lien] rest upon the same foundation?

In this case the court did not merely fail to render a judgment *for* the plaintiff; it rendered a judgment *against* plaintiff, to wit, that plaintiff take nothing, although making a separate finding that a balance was due plaintiff.

It was suggested on oral argument that a general judgment would authorize the issuance of an execution and that, as an execution from the state court against the bankrupt's property would be invalid, no general judgment should be rendered. It is true that, under our statutes, an execution ordinarily issues as a matter of course upon the rendition of a general judgment; yet there are circumstances under which no execution follows a general judgment. Claims against the estates of deceased persons may be established by suits in the circuit court. In such suits general judgments may be rendered, but no execution issued, the judgment being certified to the probate court. A similar situation arises in suits in state courts against railroads or other corporations in federal receiverships. Such a situation was considered by this court in a case against the present corporate defendant. [Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, l. c. 527, 66 S. W. (2d) 903.] There the assets of defendant were being administered by a receiver appointed by a federal court. Suit for damages for personal injuries had been brought in a state court before the appointment of a receiver and prosecuted, without permission from the federal court, against the receiver after his appointment. Under the facts of that case, we held that plaintiff was not entitled to a judgment against the receiver, but was entitled to judgment against the corporation and that no execution could issue. Quoting from another case, we said: ''The judgment of the State court is conclusive as to the amount of the debt, but the time and mode of its payment must be controlled by the court appointing the receiver.''

In Hatch v. Morosco Holding Co., 19 Fed. (2d) 766, a suit was brought in a state court. Later a receiver was appointed for the defendant corporation by a federal court. Plaintiff then filed a petition in the federal court asking permission to prosecute his suit in the state court. Permission was granted in a peculiarly worded order which, in effect, told plaintiff he might litigate his claim in the state court, but any judgment obtained would be of no avail in the receivership proceedings. Plaintiff procured a judgment in the state court and filed it as proof of his claim in the federal court. The receiver tried to litigate the claim de novo. The federal circuit court of appeals, 2nd circuit, held the state court judgment conclusive as to the amount of the indebtedness. We quote from that opinion:

''We believe that the cases are rightly decided which apply the same rule to a judgment rendered against the debtor whose property was taken into receivership after the state court had acquired jurisdiction

of the parties. To say that section 265 of the Judicial Code prevents the receivership court from staying the state suit, but that it may, nevertheless, litigate de novo the very issues decided by the state court, makes of very little value the privilege which that section confers on suitors to continue pending actions. It would be giving the empty shell, but retaining the kernel. The federal courts will not entertain the suggestion that their receivers will not obtain justice in the state courts. No end would be served by trying the claim de novo. Since the appellant was entitled to prosecute his suit, we believe that the judgment roll is entitled to the same credence as federal courts are required to give state judgments in other suits.

"While the judgment roll is conclusive as to the amount found owing to the appellant by the defendant corporation on June 10, 1923, the judgment allows interest from that date until the date of its entry. The date to which interest is to be allowed on claims of creditors sharing in the receivership assets is a matter to be settled by the receivership court. [Thomas v. Western Car Co., 149 U. S. 95, 13 S. Ct. 824, 37 L. Ed. 663.] The appellant should fare no better in respect to interest by reason of his judgment than he would were his claim proved by other evidence. The proper rebate of interest in favor of the receiver may be made upon the allowance of appellant's claim."

We hold that the trial court erred in failing to render judgment for plaintiff against the defendant corporation for the amount shown to be due without interest. The allowance of interest is a matter for the federal court having charge of the bankrupt's estate, as is also the allowance of costs, but plaintiff is primarily liable for the costs in the state court. The judgment should state that no execution shall issue and that it shall be certified to the federal court.

Accordingly, the judgment of the trial court is affirmed in so far as it declares that plaintiff is not entitled to a lien; otherwise it is reversed and the cause remanded with directions to enter a judgment for plaintiff in accordance with the views herein expressed.

All concur.