**Mildred L. DALTOW, Appellant,**

v.

**AUTOMOBILE CLUB INTER–
INSURANCE EXCHANGE,
Respondent.**

**No. WD 47799.**

Missouri Court of Appeals,
Western District.

Feb. 8, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 29, 1994.

Application to Transfer Denied
May 26, 1994.

Bruce B. Brown, Brown & Brown, Kearney, for appellant.

Robert Ernest Gould, William L. Carr, Gould & Thompson, Kansas City, for respondent.

Before ULRICH, P.J., and
BRECKENRIDGE and SPINDEN, JJ.

ULRICH, Presiding Judge.

Mildred L. Daltow appeals from the judgment in favor of Automobile Club Inter–Insurance Exchange (insurance company), which ordered that Mrs. Daltow take nothing by her allegation that the insurance company vexatiously refused to pay her insurance claim. Mrs. Daltow's claim resulted from damage to her vehicle when it was struck by another vehicle. Both vehicles were insured by the insurance company. The insurance company asserted as a defense that Mrs. Daltow executed a general release in receipt of its payment of $9,576.76 as full settlement for her claim. Although Mrs. Daltow asserts three points on appeal, whether the general release signed by Mrs. Daltow was valid is determinative.

The judgment of the trial court is affirmed.

The parties waived trial by jury and stipulated that the court would resolve the claims presented utilizing the record that included a stipulation of facts, the deposition testimony of Mrs. Daltow, the deposition testimony of an employee of the insurance company, and certain exhibits. The stipulated facts included acknowledgment that Mrs. Daltow was employed as manager of the Hyde Park Tower Apartments in Kansas City. She had held that position for ten years, and her duties included signing on new tenants, effecting collections and processing accounts, keeping current bank statements of the apartment complex, and disseminating legal notices to vacate.

Mrs. Daltow's 1987 Toyota pickup truck was insured by the insurance company. The vehicle was involved in an automobile accident on June 11, 1988, when the rear of the vehicle was struck by another vehicle also insured by the insurance company. The ve-

hicular accident resulted in extensive damage to Mrs. Daltow's truck.

Mrs. Daltow reported the accident to the insurance company on June 13, 1988. Mrs. Daltow's vehicle was initially inspected for damage on June 13, and the insurance company estimated the cost of repairing the vehicle at $4,718.25. On June 16, 1988, an additional inspection was requested because the representative of the dealership to which the vehicle had been towed believed that additional damage had occurred to the truck that was not readily visible. On June 17, 1988, the vehicle was again inspected, and the inspection disclosed additional damage that would cost $3,301.02 to repair. Thus, the total estimated cost of repair was $8,019.27.

The insurance company, through its adjuster, employed a local service to determine the fair market value of the truck. The report on the fair market value of the vehicle was received by the insurance company on June 22, and the report indicated that a comparable vehicle could be obtained on the local market for the price of $8,525. However, because Mrs. Daltow had certain improvements made to the vehicle when she purchased it, the additional cost of acquiring such improvements resulted in the total replacement cost of Mrs. Daltow's truck at $9,576.76.

On June 24, 1988, the insurance company's adjuster informed Mrs. Daltow that the insurance company would pay $9,576.76 for the vehicle on condition that she assign title, and, therefore, salvage value of the vehicle to the insurance company. Mrs. Daltow initially declined the offer. She owed $11,999.57 on the loan acquired to purchase the vehicle.

After the conversation of June 24, Mrs. Daltow consulted an attorney and discussed the facts and the insurance company's offer with him. Mrs. Daltow's attorney advised her to accept the offer and she contacted the insurance company and accepted the offer. The insurance company presented a draft in the sum of $9,576.76 as settlement for Mrs. Daltow's claim, and Mrs. Daltow accepted the draft, signed it, and received the money. Mrs. Daltow acknowledged that she read the general release printed on the back of the draft, endorsed the draft, and applied the money that she received toward the balance she owed for the truck.[1]

On July 13, 1988, Mrs. Daltow, by her attorney, provided a letter to the insurance company. The essence of the letter and subsequent demands of Mrs. Daltow was that she wanted an additional sum of money as payment for her vehicle. On May 1, 1989, the insurance company rejected all of Mrs. Daltow's demands and demanded that she convey the vehicle to it. Mrs. Daltow assigned title to the truck to the insurance company, and the vehicle was sold as salvage. The insurance company received the amount of $2,516 for the truck.

Mrs. Daltow initiated this suit on July 8, 1989. Following submission of the case pursuant to the stipulation between the parties, the trial court entered its order finding for the insurance company. Mrs. Daltow appealed.

■ Because this case was tried upon a stipulation of facts, appellate review is limited to determining whether the trial court drew the proper legal conclusions from the facts stipulated, which included exhibits, and the depositions of two witnesses. *State ex rel. County of St. Charles v. Mehan*, 854 S.W.2d 531, 533 (Mo.App.1993); *Housing Authority of St. Louis County v. Boone*, 747 S.W.2d 311, 313 (Mo.App.1988); *Miskimen v. Kansas City Star Co.*, 684 S.W.2d 394, 398 (Mo.App.1984). Therefore, this court addresses only the legal consequences of the stipulated facts, including the submitted exhibits and depositions. *Bresnan v. Basic Elec. Co.*, 721 S.W.2d 3, 5 (Mo.App.1986).

■ Mrs. Daltow asserts numerous claims on appeal including that the insurance company breached its duty to her as an insured and fraudulently failed to inform her that she could accept the amount tendered by the insurance company and reserve her excess

---

1. The release that appeared on the back of the draft stated in part: "Endorsement of this draft constitutes full release of all claims known or unknown or unanticipated which the under-

signed has or may hereafter have against the payor or any person or organization insured by payor under the policy and by reason of the occurrence referred to on the face hereof."

claim against the person driving the vehicle that struck her vehicle; the insurance company treated her as a third party claimant instead of a first party claimant; a conflict of interest existed because the adjuster employed by the insurance company investigated both Mrs. Daltow's claim and the claim of the driver of the vehicle that struck Mrs. Daltow's vehicle, also an insured; the settlement agreement lacked mutuality of consideration because the insurance company paid no more than its "admitted liability" to her; the insurance company had a contractual obligation to pay her the greater amount of the actual cash value of the vehicle or the amount of the creditor's lien existing against the vehicle; and that the insurance company failed to disclose to Mrs. Daltow the appraisal provisions contained in the insurance policy effective when a dispute exists between the insurance company and its insured. Mrs. Daltow provides no case law in point to support her claims.

The issue considered is whether the general release signed by Mrs. Daltow is valid and constitutes an absolute defense against her claims.[2] Mrs. Daltow wilfully accepted the sum of $9,576.76 from the insurance company as settlement for her claim. The sum received by Mrs. Daltow was more than the value of the vehicle at the time of the collision. She signed the release for her claims with full knowledge of the consequences of her act after speaking to an attorney of her choice. The evidence does not support her claim that the insurance company defrauded her or breached its duty to her. The release signed by Mrs. Daltow was valid. The trial court did not error in determining the legal consequences of the stipulated facts, deposition testimony, and submitted exhibits. Mrs. Daltow's appeal is denied.

The judgment of the trial court is affirmed.

All concur.

---

2. The accident was reported to the insurance company, the draft was presented to Mrs. Daltow in the sum agreed, and she signed the draft and received the money for her vehicle all within approximately three weeks. Apparently Mrs. Daltow's claim for vexatious refusal to pay is based upon the insurance company's refusal to pay more than the amount received by Mrs. Daltow.